## STEPHEN SHEPARDSON & wife vs. INHABITANTS OF COLERAIN.

In a highway, running east and west, the wrought path was changed from the south to the north side of the space between the limits of the highway, leaving a steep descent between the new and the old wrought path; and the old path ceased to be a part of the wrought or travelled pathway: At a right angle with said high way, and running therefrom southerly, was a road leading to the house of A., which road, on a certain day, was wholly obstructed by snow; and there was, on the same day, a private pathway made by A., across his fields, from his house to that part of said highway where the wrought and travelled path had been changed, as aforesaid: While the road leading from said highway to A.'s house was thus obstructed, he, knowing all the facts, was travelling, in a sleigh, along the newly wrought and travelled path in said highway, and turned his horse southerly, for the purpose of entering upon said private pathway, and in passing down the descent between the new and the old wrought and travelled path, his sleigh was upset, and he received an injury: He thereupon brought an action against the town that was bound to repair said highway, to recover damages for the injury which he received by reason of a defect therein. *Held*, that the action could not be maintained.

THIS was an action of trespass upon the case, to recover damages alleged to have been sustained by the female plaintiff, by reason of a defect in a highway, which the defendants were by law bound to repair. The declaration described the highway as "leading from Colerain to Whittingham in Vermont, passing by and near the houses of Daniel Donelson and Timothy Harris;" and the defect complained of was alleged to have existed "between the houses of said Donelson and Harris." The case was tried before *Dewey*, J. and his report thereof was as follows:

It appeared that the highway mentioned in the declaration ran from Donelson's house, westerly, to Harris's house; that, at a point about half way between these houses, another public way or lane, which the defendants were bound to repair, ran from said highway, at a right angle, southerly, to the plaintiffs' house; that there was a path from said lane, beginning near the plaintiffs' house, and running northeasterly, across the plaintiffs' fields, till it came to said highway at a point between said Donelson's house and the said lane; and that this path was made by said Stephen (one of the plaintiffs) for his own convenience. The evidence tended to

prove that the accident complained of happened at a point between the fences erected on each side of the highway described in the declaration, and directly opposite to the place where said path through the fields entered said highway. There was also evidence tending to prove that, at the place of the accident, the travelled path, many years ago, ran nearer to the fence on the southern side of said highway, than to the fence on the northern side thereof; that the defendants, about twenty years ago, worked a new path for travel, nearer the northern fence, and left a space, of about ten feet, between that and the old path; that some person, in 1845, put several cart loads of stones into the old path; and that, at the time of the accident, the new or northern path was, and for some time had been, the commonly travelled path, and that the old path had become covered with grass; that the new travelled path was higher than the old one; and that from the new travelled path to the old one was a sudden and steep offset.

There was also evidence tending to prove the following facts : That on or about the 26th of November, before the accident, the lane leading from said highway to the plaintiffs' house was obstructed by snow, so as to be impassable ; that the plaintiffs thereupon resorted to the path through the fields to the said highway ; that the lane was, shortly afterwards, rendered passable, and remained so for a few weeks, when it was again rendered impassable by snow, and so remained until and at the time of the accident ; that the plaintiffs then again resorted to said path, for the purpose of passing to and from the said highway ; that this path was made where there was but little snow, and was in the most eligible place for said purpose; that the ground to the eastward of the path was not of such a nature as to be convenient or safe for the passage of a sleigh ; that on the morning of the accident, the plaintiffs went to the village of Colerain, and on returning, in the evening, they passed, from the eastward, on said highway, to the place of the accident, and there turned to pass down from the then travelled path near the fence, on the northern side of said highway, to the old path, so called, near the

fence on the southern side, for the purpose of passing into the said path across the fields, on their way to their house; and that, in thus passing down from the travelled path in said highway to the old path, so called, the injury complained of was received; that the alleged defect in said highway was south of the said travelled path, in a place not necessary to be passed over by persons going east or west, but necessary to be passed over by persons wishing to go into the path through the fields, to go to the house of the plaintiffs.

The jury were instructed that they had a right to infer, from the evidence, that the highway extended beyond the limits of the then travelled path; that if the injury arose from any defect, or want of repair, in any part of the wrought portion of the road, or that part appropriated to travelling, the defendants were responsible therefor; that if, upon the highway, running east and west, a suitable and proper road for travellers was made and wrought, safe in its construction, of proper width for travellers to pass and repass, with proper facilities to turn upon said road, and in all respects such that the plaintiffs might have travelled with safety, continuing thereon, and if the lane road, being that commonly used by the plaintiffs to pass from the said highway to their house, was then, and for a long time had been, so obstructed with snow as to be impassable by travellers, and this fact was well known to the plaintiffs at and before the time they commenced their travelling on the day of the accident, and they, while travelling on said highway, turned out of the main road, and passed southerly down a declivity, out of the main road, for the purpose of entering upon a temporary way opened by them upon their own land, and in thus passing from the travelled path of the main road to the way over their land, at a place without the limits of the wrought or made road, but within the limits of the highway, taking the same as bounded by the fences on each side, by reason of an obstruction upon such portion of the highway, without the limits of the wrought or travelled way, the female plaintiff, while they were thus passing to their own private way

received the injury complained of, by the upsetting of their sleigh, as alleged in their declaration, the defendants were not responsible for the damage thereby sustained.

The jury returned a verdict for the defendants, and thereby settled the point, that the old path, so called, on the southern side of the highway, had ceased to be a part of the worked or travelled pathway, even if it was within the limits of the highway.

The verdict is to be set aside, if the instructions were not sufficiently favorable to the plaintiffs; otherwise, judgment is to be entered on the verdict.

*Alvord,* for the plaintiffs.    The Rev. Sts. *c.* 25, § 22, give an action to " any person who shall receive an injury in his person or property by reason of any defect or want of repair in any highway," and not for a defect in the wrought part only of a highway.    The cases that have been decided as to the wrought part of a road proceeded on the ground that the party complaining was in fault in going out of the wrought part.    In the case at bar, the whole fault was in the defendants, as the plaintiffs were obliged to go out of the wrought part, in order to get home.    In *Cobb* v. *Standish,* 2 Shepley, 198, it was decided that where the defendants enticed the plaintiff to go out of the wrought way, they were answerable to him for the injury that he thereby received. *A fortiori* the present defendants are answerable; for they compelled the plaintiffs to go out of the wrought part of the road.    See also *Green* v. *Danby,* 12 Verm. 338.    In *Hannum* v. *Belchertown,* 19 Pick. 311, the injury, for which the plaintiff recovered, was received out of the wrought part of the highway.

Suppose the path in which the accident happened had been through the lane, but had not coincided with the wrought path for summer travel; would not the plaintiffs have a remedy ?    If they would, then why not now ?    In the case upposed, as in the actual case, the injury would have been received out of the wrought part of the lane, and by reason of a defect out of the wrought part.    And in the actual case,

as well as in the case supposed, the injury was received within the highway, and within the path appropriated, for the time being, to travel, and appropriated to precisely the same travel in both cases; viz. the lane travel, which the defendants were by law bound to accommodate. Yet the instructions to the jury precluded them from taking this view of the case; inasmuch as they were instructed that the place where the accident occurred must have been the part of the highway appropriated to travel east and west, in order to render the defendants liable.

*Aiken,* for the defendants. The verdict has negatived all the allegations in the plaintiffs' declaration, which contains no reference to any defect, except in the highway between the houses of Donelson and Harris. The lane is not mentioned. The defect proved, if any, was therefore a defect different from that which was alleged.

Admitting that the plaintiffs received an injury out of the travelled part of the road, yet they are not entitled to a remedy, because they knew all the facts. This is not like the case of a stranger, who comes unexpectedly upon a defect in a highway. This case is not distinguishable from that of *Tisdale* v. *Norton,* 8 Met. 388. Though the injury in the present case was received within the walls enclosing the road, yet it was not received within that part which the defendants were bound to make passable. Towns are not bound to make it safe for travellers to turn from a highway at right angles into a field; nor are they liable to an action, unless they are also indictable. *Howard* v. *North Bridgewater,* 16 Pick. 189.

DEWEY, J. It is strongly argued by the counsel for the plaintiffs, that this case does not fall within the principles stated in *Howard* v. *North Bridgewater,* 16 Pick. 189, and *Tisdale* v. *Norton,* 8 Met. 388, and that, upon the facts supposed to be established by the evidence, the plaintiffs might well maintain this action. That it is not enough that the injury be shown to have occurred within the actual limits of the located highway, seems to be well settled by authority

and upon sound principle. The contrary doctrine would, in effect, require the entire width of the highway to be free from obstructions, and fit for use for the traveller; a burden quite too onerous upon towns, that are bound to keep their roads in repair.

Then it is argued, that towns are bound to furnish safe and convenient roads at all seasons, and if they neglect to do it, they are responsible for all damages occurring within the limits of the road. This must be taken with some limitations, as there may be cases where roads may be impassable and great and dangerous obstructions may exist therein wholly impeding the traveller from passing over the same, and yet no action accrue to the individual, who may thus be deprived of making use of the road. In many cases that may be supposed, the only remedy for such neglect of duty is by an indictment. It is not enough that the highway is defective and out of repair; the party claiming damages must be without fault on his part, and while travelling on the highway receive a direct injury. If the highway is impassable, by reason of some notorious defect, he is not at liberty to enter upon it, and pass over it to the place of the obstruction, and then select a new route over other lands, and travel upon it at the risk of the town, if injured by obstruction on such new route. Nor is it enough that the necessity for taking such other route was occasioned by the neglect of the town to keep their road in proper repair. The case of *Tisdale* v. *Norton* presented such circumstances strongly, but they did not avail. It is true that the injury, in that case, occurred upon the new route, thus taken, without the limits of the highway; and that fact increased the difficulty of maintaining that action. But that case presented, as strongly as the present, the reasonableness and the necessity of the departure from the ordinary travelled way.

It was asked by the counsel for the plaintiffs, whether, if the wrought road through the lane had been obstructed by snow, and there had been used, for the public travel through the lane, some other part of the highway, and by reason of some

obstruction therein, an injury had been sustained, the party thus injured might not have recovered damages, although travelling without the wrought road appropriated for the summer travel ?  If he might, it was then inquired, why not here ?  The cases are by no means parallel.  In the case supposed, the path travelled on is, for the time, the made way for travellers passing over the lane ; the lane being, throughout its whole length, a public way.  The traveller does not leave the ordinary route appropriated for travellers, for the purpose of entering upon a private way.  But in the case at bar, there was no such newly appropriated way without the limits of the made way used by the public, for the purpose of continuing their travel upon a public way.  The plaintiff left the wrought road, not for the purpose of finding a better road upon the public way, or with a view of continuing to travel upon the highway ; but he designedly left the wrought road, for the purpose of continuing his travel upon his private way over his own land.  This he might do ; but at his peril if injured thereby, he fully knowing the obstruction upon the lane road before entering upon his journey.  The way which is set forth in the declaration, as the road out of repair, was found by the jury to have been properly constructed, to have been of proper width for travellers to pass and repass, with proper facilities to turn upon the road, and to have been, in all respects, such a road that the plaintiff might have travelled with safety, continuing thereon.

Could the defendants have been indicted for any want of repair as to this road ?  Clearly they could not.  The defect was elsewhere.  It was the lane that was out of repair, and in an unfit state for the traveller to pass thereon ; and if the plaintiff had received his injury there, the defendants would have been liable.  But the road through the lane is not made the subject of this action.  The plaintiff forbore attempting to pass over that part of the way, but did elect to leave the made way of another road, for the purpose of entering upon his private way, induced to do so by reason of the known obstruction in the lane road.

The court are of opinion that the instructions to the jury were proper, and that judgment must be entered on the verdict for the defendants.